IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILMINGTON TRUST, N.A., SUCCESSOR | § | |
| TRUSTEE TO CITIBANK, N.A., AS | § | |
| TRUSTEE F/B/O HOLDERS OF | § | |
| STRUCTURED ASSET MORTGAGE | § | |
| INVESTMENTS II INC., BEAR | § | |
| STEARNS ALT-A TRUST 2007-3, | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES SERIES 2007-3, | § | |
|     Plaintiff, | § | |
| v. | § | Civil Acton No. 3:18-cv-00075 |
| JON M. ROBERTSON AND | § | |
| ARMINDA M. ROBERTSON A/K/A | § | |
| ARMINDA C. ROBERTSON, | § | |
|     Defendants. | § | |
| JON M. ROBERTSON AND | § | |
| ARMINDA M. ROBERTSON A/K/A | § | |
| ARMINDA C. ROBERTSON, | § | |
|     Counter-Plaintiffs, | § | |
| v. | § | |
| WILMINGTON TRUST, N.A., SUCCESSOR | § | |
| TRUSTEE TO CITIBANK, N.A., AS | § | |
| TRUSTEE F/B/O HOLDERS OF | § | |
| STRUCTURED ASSET MORTGAGE | § | |
| INVESTMENTS II INC., BEAR | § | |
| STEARNS ALT-A TRUST 2007-3, | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES SERIES 2007-3; | § | |
| DAVID R. GIBSON; ROBERT V.A. HARRA; | § | |
| WILLIAM NORTH; KEVYN RAKOWSKI; | § | |
|     Counter-Defendants. | § | **Jury Demanded** |

## FIRST AMENDED ANSWER AND FIRST AMENDED COUNTERCLAIM OF DEFENDANTS JON M. ROBERTSON AND ARMINDA M. ROBERTSON– - JURY DEMANDED

TO THE HONORABLE JANE BOYLE, UNITED STATES DISTRICT JUDGE:

Defendants Jon M. Robertson and Arminda M. Robertson a/k/a Arminda C. Robertson

("Defendants" or "the Robertsons") hereby file, pursuant to Rule 12 of the Federal Rules of Civil Procedure, this their Answer and Counterclaim to the Original Complaint of Plaintiff, Wilmington Trust, N.A., Successor Trustee to Citibank, N.A., as Trustee F/B/O Holders of Structured Asset Mortgage Investments II Inc., Bear Stearns Alt-A Trust 2007-3, Mortgage Pass-Through Certificates Series 2007-3.  In answer to the allegations of the Original Complaint, numbered to correspond to the respective numbered paragraphs of the Complaint, Defendants state the following.

## ANSWER

### I.  PARTIES

1.      Defendants admit the allegations of Paragraph 1 of the Complaint.

2.      Defendants are without sufficient knowledge of admit or deny the allegations of Paragraph 2 of the Complaint, and therefore deny the same.

### II.  JURISDICTION AND VENUE

3.      Defendants deny the allegations of Paragraph 3 of the Complaint because they dispute the validity of any assignment to Plaintiff, and specially deny that all parties necessary for adjudication have been included herein.

4.      Defendants deny that jurisdiction is proper in this Court but admit only that the underlying circumstances related to the matters in dispute herein occurred in this District and Division.

### III.  FACTS

5.      Defendants admit only that they own and reside in the property located at 5511 West Mockingbird Lane, Dallas, Dallas County, Texas, as their primary residence (the "homestead"). Defendants further admit only that on April 20, 2007, they executed the documents described in

Paragraph 5 of the Complaint.  Defendants specially deny that such documents were valid and enforceable.

6.      Defendants deny that the Security Instrument referred to in Paragraph 6 of the Complaint is valid and enforceable and allege that such void document speaks for itself.

7.      Defendants are without sufficient knowledge or information to admit or deny the allegations of Paragraph 7 of the Complaint, and therefore deny the same.

8.      Defendants deny the allegations of Paragraph 8 of the Complaint and specially deny that the Note and Security Instrument referred to therein are valid and enforceable.

9.      Defendants deny the allegations of Paragraph 9 of the Complaint and specially deny that Mortgage Electronic Registration Systems, Inc., had any lawful capacity to execute any instruments with respect to the Defendants' homestead.

10.     Defendants deny the allegations of Paragraph 10 of the Complaint and specially deny that the letter dated September 4, 2015, was the first notice of acceleration.

11.     Defendants deny the allegations of Paragraph 11 of the Complaint.

12.     Defendant deny the allegations of Paragraph 12 of the Complaint and specially deny that any payments are due under the alleged loan in question.

## IV. CAUSES OF ACTION

## COUNT 1 - JUDICIAL FORECLOSURE

13.     Defendants incorporate their answers to Paragraphs 1 - 12 above.

14.     Defendants deny the allegations of Paragraph 14 of the Complaint.

15.     Defendants admit only that Plaintiff is seeking the relief alleged in such Paragraph, but deny that Plaintiff is entitled to any relief herein.

## COUNT 2 - CONTRACTUAL SUBROGATION

16.    Defendants incorporate by reference their answers Paragraph 1 - 15 above.

17.    Defendants admit only that Plaintiff is seeking the relief as set forth in such Paragraph, but specially deny that Plaintiff is entitled to any recovery or that the alleged advances were in fact made.

## COUNT 3 - EQUITABLE SUBROGATION

18.    Defendants incorporate by reference their answers to Paragraphs 1 - 17 above.

19.    Defendants admit only that Plaintiff is seeking the relief as set forth therein, but specially deny that Plaintiff is entitled to any recovery herein, either equitably or pursuant to contract and specially deny that the alleged advances were in fact made.

## COUNT 4 - FORECLOSURE OF EQUITABLY OR CONTRACTUALLY SUBROGATED LIEN

20.    Defendants incorporate by reference their answers to Paragraphs 1 - 19 above.

21.    Defendants admit only that Plaintiff is seeking the relief set forth in such Paragraph, but specially deny that Plaintiff is entitled to any recovery herein.

## COUNT 5 - WRIT OF POSSESSION

22.    Defendants incorporate by reference their answers to Paragraphs 1 - 21 above.

23.    Defendants admit only that Plaintiff is seeking the relief set forth in such Paragraph, but specially deny that Plaintiff is entitled to any relief herein.

## COUNT 6 - ATTORNEYS' FEES

24.    Defendants incorporate by reference their answers to Paragraphs 1 - 23 above.

25.     Defendants deny the allegations of Paragraph 25, deny that the Security Instrument is valid and enforceable, and deny that Plaintiff is entitled to any recovery of attorneys' fees under any legal theory.

26.     Defendants deny the allegations of Paragraph 26 and specially deny that the Security Instrument referred to therein is valid and enforceable or that Plaintiff is incurring any reasonable and necessary attorneys' fees for which it has any legal or equitable right to recovery.

## AFFIRMATIVE DEFENSES

Answering further if necessary, but without waiving the above and foregoing answers, Defendants assert the following affirmative defenses or matters in avoidance:

27.     The alleged loan upon which the Plaintiff's complaint is based are void and unconstitutional, pursuant to §§50(a)(6)(O), 50 (a)(6)(L)(i), 50(a)(6)(Q)(x), and 50 (a)(6)(Q)(b)(ii) of Article XVI of the Texas Constitution.  Notice of such violations was given to Plaintiff, pursuant to §50(a)(6)(Q)(x) of Article XVI of the Texas Constitution, on September 12, 2013, giving Plaintiff sixty (60) days notice of its right to cure these defects.  A true and correct copy of such notice is attached hereto as Exhibit "A" and incorporated by this reference.  This notice was given again to Plaintiff on May 19, 2014, January 8, 2015, and to the law firm representing Plaintiff herein and signing the Complaint herein, on September 15, 2016, as shown by the letter and exhibits attached hereto as Exhibit "B."  Plaintiff failed and refused to make such corrections and, as a result, the underlying Note and all instruments executed to secure the same are void and unenforceable.

28.     The underlying transaction is tainted by fraud because the loan was based upon a fraudulently inflated appraisal performed by David Wertenberger, the husband of the mortgage broker, Patty Wertenberger, who brokered the mortgage and secured the same through Realty

Mortgage Corporation.   The appraisal upon which the loan was made was fraudulently excessive, done so for the purpose of making the loan appear to be in conformity with the Texas Constitution. Such fraud has incurably tainted the entire transaction and all rights that Plaintiff claims to have secured arising therefrom.

29.     The alleged promissory note is unenforceable as the fruit of an unlawful conspiracy to defraud the United States, commit securities fraud, make false statements to regulators, making false statements in documents required to be filed with the Securities and Exchange Commission, making false entries in banking records, making false statements in documents required to be filed with the Federal Reserve, and making false certifications in financial reports.  As shown below in greater detail, Plaintiff, in conspiracy with the individual counterdefendants, entered into an illegal conspiracy to violate Federal law by purposefully failing to classify the alleged promissory note upon which this suit is based as nonperforming and uncollectible, despite numerous reports and submissions by Counterplaintiffs of such facts.  This was part of a massive conspiracy to underreport the nonperforming loans held by Plaintiff, and to make its financial position appear materially better than it really was.  As a result of this illegal conspiracy, the individual counterdefendants have been convicted of such criminal behavior.

30.     The claims of Plaintiff are barred by the applicable statutes of limitations, including but not limited to §16.004 of the Texas Civil Practice & Remedies Code, because Plaintiff has repeatedly alleged default and acceleration of the alleged Promissory Note in question long prior to four (4) years preceding the filing of this action.

31.     Plaintiff is guilty of laches caused by its unreasonable delays in asserting its claims herein.

**FIRST AMENDED ANSWER AND FIRST AMENDED  COUNTERCLAIM OF**
**DEFENDANTS JON M. ROBERTSON AND ARMINDA M. ROBERTSON– - JURY DEMANDED - Page 6**

32.     Plaintiff has unclean hands and is not entitled to any equitable relief because of its inequitable conduct.

33.     Even if Plaintiff's claims were not otherwise barred in law and equity, as Defendants claim they are barred, Plaintiff would not be entitled to be equitably subrogated to the underlying lien which was allegedly paid off with the proceeds of the illegal loan, because the amount of the alleged equitable lien would still be unconstitutional under §50(a)(6) of the Texas Constitution, since a loan in such amount would still be in excess of eighty (80%) percent of the fair market value of Defendants' homestead.

34.     Plaintiff is further barred from seeking equitable subrogation to the underlying mortgage which was allegedly paid with proceeds from the illegal loan because Plaintiff had notice of its deficiency and failed to cure the same within the time period allowed by law.  It has therefore waived any rights to equitable recovery, and is guilty of laches and unclean hands in such regard.

35.     Plaintiff has engaged in inequitable conduct by repeatedly requesting submission of modification requests by Defendants and advising them that their modification requests would be duly considered, and then repeatedly refusing even to consider the same, asserting that Defendants have failed to satisfy a "NPV Valuation" standard, something beyond the provisions of the law and the void loan documents.

36.     Plaintiff has waived its rights to recovery and its estopped from seeking relief herein.

37.     By demanding the imposition of an equitable lien in the amount of $552,186.23 against Defendants' homestead, Plaintiff has failed to give credit for all payments received under the unconstitutional Note which were required by law to be credited and which, pursuant to the Texas Constitution, have been forfeited.  Therefore, the demand for a lien of over $550,000.00 without

giving credit to the approximate $250,000.00 in payments previously made on such loan constitutes a charging of interest greater than the amount authorized by law, in violation of §305.001 of the Texas Finance Code and further represents violation of §392.304(a)(8) of the Texas Finance Code by misrepresenting the character, extent, or amount of a consumer debt.  Thus, the very filing of the Complaint herein is such a violation.

## V. PRAYER

38.     Defendants admit only that in the prayer of the Complaint, Plaintiff has set forth relief which it is requesting, but specially deny that Plaintiff is entitled to any recovery herein under any theory of law or equity.

## FIRST AMENDED COUNTERCLAIM

Jon M. Robertson and Arminda M. Robertson, becoming actors herein, complain of Wilmington Trust, N.A., Successor Trustee to Citibank, N.A., as Truste F/B/O Holdings of Structured Asset Mortgage Investments II Inc., Bear Sterns Alt-A Trust 2007-3 Mortgage Pass-Through Certificates Series 2007-3, David R. Gibson, Robert V. A. Harra, William North, and Kevyn Rakowski as Counter-Defendant, and state the following.

### Parties, Jurisdiction and Venue

1.     Counter-Plaintiffs are individual residents of the State of Texas who reside in their homestead at 5511 West Mockingbird Lane, Dallas, Dallas County, Texas.

2.     Counter-Defendant Wilmington Trust, N.A., Successor Trustee to Citibank, N.A., as Trustee F/B/O Holdings of Structured Asset Mortgage Investments II Inc., Bear Sterns Alt-A Trust 2007-3 Mortgage Pass-Through Certificates Series 2007-3, is the Plaintiff herein and alleges that it

is the assignee of the rights of Realty Mortgage Corporation in and to certain documents purporting to create a lien upon Counter-Plaintiffs' homestead.  Counter-Defendant Wilmington Trust, N.A., may be served by serving its counsel of record herein.

3.     Counter-Defendant David R. Gibson is the former Chief Financial Officer of Plaintiff and Counter-Defendant Wilmington Trust, and who has been convicted of multiple counts of felony violations of the United States, including engaging in an unlawful conspiracy to defraud the United States, commit securities fraud, make false statements to regulators, making false statements in documents required to be filed with the Securities and Exchange Commission, making false entries in banking records, making false statements in documents required to be filed with the Federal Reserve, and making false certifications in financial reports.   Gibson may be served by serving counsel for Wilmington Trust herein.

4.     Counter-defendant Robert V. A. Harra is the former President of Plaintiff and Counter-Defendant Wilmington Trust, and who has been convicted of multiple counts of felony violations of the United States, including engaging in an unlawful conspiracy to defraud the United States, commit securities fraud, make false statements to regulators, making false statements in documents required to be filed with the Securities and Exchange Commission, making false entries in banking records, making false statements in documents required to be filed with the Federal Reserve, and making false certifications in financial reports.   Harra may be served by serving counsel for Wilmington Trust herein.

5.     Counter-defendant William North is the former Chief Credit Officer of Plaintiff and Counter-Defendant Wilmington Trust, and who has been convicted of multiple counts of felony violations of the United States, including engaging in an unlawful conspiracy to defraud the United

States, commit securities fraud, make false statements to regulators, making false statements in documents required to be filed with the Securities and Exchange Commission, making false entries in banking records, making false statements in documents required to be filed with the Federal Reserve, and making false certifications in financial reports.   North may be served by serving counsel for Wilmington Trust herein.

6.     Counter-defendant Kevyn Rakowski is the former Controller of Plaintiff and Counter-Defendant Wilmington Trust, and who has been convicted of multiple counts of felony violations of the United States, including engaging in an unlawful conspiracy to defraud the United States, commit securities fraud, make false statements to regulators, making false statements in documents required to be filed with the Securities and Exchange Commission, making false entries in banking records, making false statements in documents required to be filed with the Federal Reserve, and making false certifications in financial reports.   Rakowski may be served by serving counsel for Wilmington Trust herein.

7.     Together, Counter-defendants Gibson, Harra, North, and Rakowski are collectively referred to herein as "the individual Counter-defendants."

## BACKGROUND FACTS

8.     Counter-Plaintiffs have continuously resided in their homestead at 5511 W. Mockingbird Lane  for over 38 years, rearing their six children in their home.  Tragically, in 2007 it became apparent that they would urgently need a large amount of cash to pay horrendously high, unanticipated medical expenses for treating the terminal stage cancer of their adult daughter.  During their attempts to raise such cash, somehow Patty Wertenberger, a mortgage broker for Realty Mortgage Corporation, became aware of their needs.

**FIRST AMENDED ANSWER AND FIRST AMENDED  COUNTERCLAIM OF**
**DEFENDANTS JON M. ROBERTSON AND ARMINDA M. ROBERTSON– - JURY DEMANDED - Page 10**

9.      Counter-Plaintiffs duly submitted a loan application to Ms. Wertenberger, who arranged for an appraisal which ultimately was performed by her husband, resulting in the loan closing in question.    They also proceeded to liquidate various other real estate holdings and investments to provide urgent care and treatment for their daughter.  Counter-Plaintiffs were unable, however, to prevent their daughter's untimely death from cancer.

10.     Still devastated by their daughter's tragic death, Counter-Plaintiffs attempted for years to deal with the larger mortgage payments on the new loan obtained from Realty Mortage Corporation, being strapped for cash due to their daughter's tragic death.  They struggled to make their mortgage payments and were frequently late.   It was not until years later that they realized that the appraisal on which the loan was based was drastically overstated, far in excess of the home's true value.  At such time, the loan was being serviced by EMC Mortgage and taken over by Chase Mortgage.

11.     Counter-Plaintiffs approached a loan servicing officer with Chase to explain their financial difficulties and to discuss apparent irregularities in the loan.  They had been making their loan payments late for a period of time, but were advised by the loan officer that to get Chase's attention to attempt to renegotiate the loan, they should simply stop making payments.

12.     Counter-Plaintiffs accordingly stopped making their loan payments.  After a period of time, they were advised that a new servicing company, SPS Select Portfolio Servicing, Inc. ("SPS") was servicing their loan.  What followed thereafter was an unending and wasteful series of verbal and written communications with ill-advised and uninformed representatives who had no understanding of the significance of a Texas homestead, and who had no comprehension of the problems inherent in the loan in question.

**FIRST AMENDED ANSWER AND FIRST AMENDED  COUNTERCLAIM OF**
**DEFENDANTS JON M. ROBERTSON AND ARMINDA M. ROBERTSON– - JURY DEMANDED - Page 11**

13.     At the invitation of SPS, Counter-Plaintiffs made repeated submissions of applications to modify their loan, including but not limited to packages submitted on:

9/8/2009
12/2/2009
12/29/2009
5/12/2010
8/2/1010
1/9/2011
2/28/2011
4/20/2011
11/22/2011
12/9/2011
1/23/2012
5/18/2012
8/17/2012
11/16/2012
1/13/2013
3/14/2013
3/29/2013
9/10/2013
10/16/2013
10/30/2013
1/6/2014
1/14/2014
8/19/2014
8/25/2014
9/4/2014
9/25/2014
2/18/2015
3/22/2015
4/10/2015
5/5/2015
6/18/2015
11/22/2015
3/31/2016
4/11/2016
6/2016
7/2017

Typically, each time a modification package was submitted, a different employee of SPS was

involved, and they would typically request additional documentation.  Whenever the requests were denied, Counter-Plaintiffs appealed the denials and submitted more documentation.  It would take a wheelbarrow to attach to this Counterclaim all of the materials submitted to SPS in response to its modification requests.

14.     On several occasions, SPS sent a person– not a licensed appraiser– to value Counter-Plaintiffs' homestead in connection with the modification requests, after being advised by Counter-Plaintiffs that the purported valuation of the homestead upon which the illegal loan had been made was based was fraudulently excessive.  The Broker Opinions of Value developed by SPS were in the range of $499-510,000, but a more accurate valuation for the property was approximately $480,000.

 Counter-Plaintiffs also advised SPS of numerous significant items of deferred maintenance and needed repairs for their home which they could not afford to make, estimated to amount to $60-90,000, and which drastically impacted the value of the homestead.  None of this seemed to have any impact upon the representatives of SPS, residing and working in Utah and unaware of the significance of a Texas homestead.  The undersigned counsel for Counter-Plaintiffs sent notice of the unconstitutional defects of the loan on September 12, 2013, as shown by Exhibit "A" attached hereto, but such notice was ignored and no cure provided.

15.     As a matter of law, Counter-defendants were collectively charged with the knowledge, from inception, of the illegality and unenforceability of the alleged loan to Conter-plaintiffs.  Additionally, they were collectively made aware by the repeated submissions by Counter-plaintiffs beginning in 2009, that the loan was uncollectible and nonperforming.  Further, they had undeniable knowledge as of September, 2013, of the specific constitutional defects in the alleged loan making the same uncollectible and unenforceable.

16.     With such constructive and actual knowledge, Counter-defendants together entered into a conspiracy to defraud the United States, commit securities fraud, make false statements to regulators, making false statements in documents required to be filed with the Securities and Exchange Commission, making false entries in banking records, making false statements in documents required to be filed with the Federal Reserve, and making false certifications in financial reports.   On information and belief, the alleged loan on which this suit is based is only one of a multitude of unenforceable and uncollectible loans held in Counter-defendant Wilmington Trust's portfolio.  Rather than report the truth concerning the genuine status of Counter-plaintiffs' alleged note payable, and, on information and belief, numerous other uncollectible loans, Counter-defendants conspired to commit such illegal acts to conceal the true extent of their uncollectible loans.

17.     On information and belief, the alleged note payable on which this suit is based was not classified as uncollectible and nonperforming, as it truly was, but rather, for years, was reported as being in the loan modification process, which postponed the day of reckoning when the loan would have to be recorded as uncollectible, which would have an adverse impact upon the financial condition of Wilmington Trust.  The collective result of so treating the alleged note payable of Counter-plaintiffs, along with numerous other uncollectible loans, was to cause a material overstatement of the financial condition of Wilmington Trust.

18.     Counter-plaintiffs were within the zone of illegality of such unlawful conspiracy because their very homestead, unique under law and equity, and their personal credit reputation, were exposed and endangered, resulting in actual and consequential damages.

19.     In late 2016, Counter-defendant Wilmington Trust engaged the law firm of Locke,

Lord, which sent an inquiry to the undersigned counsel for Counter-Plaintiffs, whose identity and involvement in the multitude of modification proposals had been well known to SPS over the years. Despite having previously been advised of the specific constitutional defects in the loan SPS' counsel, the firm filing the Complaint herein, pretended not to understand the deficiencies in the loan and sent a demand letter requesting the details of Counter-Plaintiffs' claim, apparently hoping to trap Counter-Plaintiffs into giving SPS a new 60-day window within which to attempt a cure. This was probably a last-ditch attempt to save the individual Counter-Defendants from liability for including Counter-plaintiffs in their unlawful underreporting of uncollectible and unenforceable loans.

20.     The undersigned counsel for Counter-Plaintiffs sent his letter dated September 15, 2016, attached hereto as Exhibit "B," advising SPS' counsel that the time for cure had long since expired. The letter was ignored. The attempt to create an escape route for the Counter-defendants failed miserably.

21.     Ever since 2011, Plaintiff or its predecessors or agents have repeatedly trashed the credit of Counter-Plaintiffs, reporting them as delinquent on their mortgage, and effectively preventing them from ever qualifying to obtain a replacement mortgage or make an offer to refinance the mortage elsewhere. Such ongoing adverse credit reporting has caused substantial damage to Counter-Plaintiffs. The filing of this suit has been, finally, the last straw in a never-ending series of refusals to accept the consequences of the illegality practiced by Plaintiff's predecessor in interest at the origin of the loan in question.

22.     Also, throughout the dealings between the parties, the constant barrage of threats and demands from Counter-defendant Wilmington Trust has caused ongoing severe mental anguish and emotional distress, constantly threatening them with loss of their home.

23.     Counter-Plaintiffs have satisfied all conditions precedent to the bringing of this action, including but not limited to giving of notices as required by §50(a)(6)(Q)(x) of Article XVI of the Texas Constitution, §38.001 of the Texas Civil Practice & Remedies Code and Chapters 305 and 392 of the Texas Finance Code.

## COUNT I.

## VIOLATION OF §50 ARTICLE XVI OF THE TEXAS CONSTITUTION

24.     Counter-Plaintiffs incorporate by reference the allegations of paragraph 1 - 23 above in the above-stated Counterclaim as if the same were fully set forth herein.

25.     This is a claim, pursuant to §50, Article XVI of the Texas Constitution.  The alleged indebtedness upon which Plaintiff sues is based upon an extension of credit that for a principal amount greater than eighty (80%) percent of the fair market value of the homestead on the date the extension of such credit was made and which required payment of expenses in excess of those permitted under §50 of Article XVI of the Texas Constitution and further sought to charge variable rates of interest causing the extension of credit to have an illegal amortization.

26.     Because notice was previously given to the Counter-Defendant Wilmington Trust of the constitutional defects in the extension of credit upon which it is suing, by letter dated September 12, 2013, and because the defects were not cured within sixty (60) days of the giving of such notice, the alleged lien upon which Plaintiff sues is void and unenforceable, and Plaintiff is required to forfeit all principal and interest under such loan, including but not limited to the payments previously made by the Counter-Plaintiffs.

27.     Counter-Plaintiffs further seek recovery of all of their reasonable and necessary attorneys' fees incurred in the District Court, the Court of Appeals, and the Supreme Court, plus all

costs of court and expenses incurred in the prosecution of this counterclaim.

## COUNT II.

## TEXAS CONSUMER CREDIT CODE

28.     Counter-Plaintiffs incorporate by reference the allegations of paragraphs 1 - 27  above as if the same were fully set forth herein.

29.     This is a cause of action for recovery of all relief provided for, pursuant to §§305.001 - 305.004 of the Texas Finance Code and §392.305 and §392.403 of the Texas Finance Code for the charging and/or collection of usurious interest in excess of that allowed by law.

30.     Because of the above-described violations of the Texas Constitution, at all relevant times since September 12, 2013, the lawful amount of interest and principal which could be charged by Plaintiff is zero ($0) dollars.  On numerous occasions, far in excess of 25 or more, Counter-Defendant Wilmington Trust has charged or sought to charge hundreds of thousands of dollars for forfeited principal and illegal interest all in excess of that authorized by law.  Each and every such communication has constituted a misrepresentation of the character, extent, or amount of the consumer debt allegedly owed by Counter-Plaintiffs.

31.     Each time a demand has been made by or on behalf of Plaintiff, including the very filing of the Complaint herein, Plaintiff has "charged" interest in an amount far in excess of that allowed by law, and indeed more than twice the amount allowed by  law.  This even includes the demand for imposition of an equitable lien upon Counter-plaintiffs' home, since nothing was in fact owed.

32.     Pursuant to such provisions of the Texas Finance Code, Counter-Plaintiffs seek recovery of all of their actual and consequential damages, including but not limited to mental anguish

and emotional distress, damage to credit reputation, and other consequential damages caused by the illegal actions of Counter-Defendant for which they seek recovery.

33.     Counter-Plaintiffs further seek entry of injunctive relief barring any further actions by Counter-Defendant to recover on such illegal and forfeited extension of credit, and enjoining Counter-Defendant from credit reporting adversely impacting the credit of Counter-Plaintiffs.

34.     Counter-Plaintiffs further seek recovery of their reasonable and necessary attorneys' fees for all actions taken in the trial court, the Court of Appeals, and the Supreme Court.

### COUNT III.

### TEXAS DECEPTIVE TRADE PRACTICES ACT

35.     Counter-Plaintiffs incorporate by reference the allegations of paragraphs 1 - 34 above as if the same were fully set forth herein.

36.     This is a cause of action under the Texas Deceptive Trade Practices - Consumer Protection Act, Chapter 17 of the Texas Business & Commerce Code.

37     Pursuant to §392.404, the violations of the Texas Debt Collection Practices Act also constitute violations of Chapter 17 of the Texas Business & Commerce Code and are deceptive trade practices as defined therein.  At all material times, Counter-Plaintiffs were "consumers" within the meaning of the DTPA, and the loan in question was a consumer loan.

38.     Pre-suit notice has been given by Counter-Plaintiffs as required by §17.505 of the Texas Business & Commerce Code.

39.     Pursuant to §17.50 of the Texas Business & Commerce Code, Counter-Plaintiffs seek recovery of all of their economic damages, and because such actions were undertaken by Counter-Defendant knowingly and intentionally, damages for mental anguish and three (3) times the amount

**FIRST AMENDED ANSWER AND FIRST AMENDED  COUNTERCLAIM OF**
**DEFENDANTS JON M. ROBERTSON AND ARMINDA M. ROBERTSON– - JURY DEMANDED - Page 18**

of mental anguish and emotional damages, plus injunctive relief enjoining further conduct of such illegal acts and orders requiring the cessation of adverse credit reporting, and recovery of all reasonable and necessary attorneys' fees incurred in the District Court, the Court of Appeals, and the Supreme Court.

## COUNT IV.

## SUIT TO QUIET TITLE

40.    Counter-Plaintiffs incorporate by reference the allegations of paragraphs 1 - 39 of the Counterclaim above as if the same were fully set forth herein.

41.    This is a suit to quiet title to the Counter-Plaintiffs homestead pursuant to the law of the State of Texas.

42.    As set forth above, Counter-Defendant is alleging the existence of legal and/or equitable liens upon Counter-Plaintiffs' homestead and has unlawfully clouded the title to Counter-Plaintiffs' homestead by assertion of such alleged liens and encumbrances.  These claims are groundless and actually being brought in violation of the Texas Constitution and applicable provisions of Texas law as set forth herein.

43.    Counter-Plaintiffs therefore demand that the Court quiet title to Counter-Plaintiffs' homestead with the commonly known address of 5511 W. Mockingbird Lane, Dallas, Dallas County, Texas 75209 with the legal description as set forth on Exhibit "B" attached hereto and incorporated by this reference.

44.    Counter-Plaintiffs further seek recovery of their reasonable and necessary attorneys' fees for all actions taken in the District Court, the Court of Appeals, and the Supreme Court.

## COUNT V

## DECLARATORY JUDGMENT

45.     Counter-Plaintiffs incorporate by reference the allegations of paragraphs 1 - 44 of the Counterclaim  above as if the same were fully set forth herein.

46.     This is a cause of action for declaratory relief, pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. §§2201-2202,  and Tex. Civ. Prac. & Rem. Code Chapter 37.

47.     Counter-Plaintiffs seek a declaration that the Note and Security Instrument upon which Counter-Defendant's suit is based, are void and unenforceable, and injunctive relieve striking and vacating any liens created thereby, and enjoining Counter-Defendant from making any adverse credit reporting concerning Counter-Plaintiffs, or taking any action to enforce such illegal instruments.

48.     Counter-Plaintiffs further request that the Court, in its discretion, award Counter-Plaintiffs their reasonable and necessary attorneys' fees for all actions in the District Court, the Court of Appeals, and the Supreme Court.

## COUNT VI

## CRIMINAL CONSPIRACY

49.     Counter-Plaintiffs incorporate by reference the allegations of paragraphs 1 - 48 of the Counterclaim  above as if the same were fully set forth herein.

50.     Counter-defendants Gibson, Harra, North, and Rakowski, in their respective positions of superior knowledge and control of the affairs of Wilmington Trust, entered into an unlawful conspiracy to defraud the United States, commit securities fraud, make false statements to regulators, making false statements in documents required to be filed with the Securities and Exchange Commission, making false entries in banking records, making false statements in documents

required to be filed with the Federal Reserve, and making false certifications in financial reports, by, among other things, wilfully and fraudulently under-reporting the uncollectible loans held by Wilmington Trust, which included the alleged note upon which this suit is based.  This criminal conspiracy has resulted in a settlement by Wilmington Trust to avoid criminal liability, and in criminal convictions of the individual Counter-defendants for multiple counts of felony violations of law, in *United States of America v. David R. Gibson, Robert V.A. Harra, William North, and Kevyn Rakowski*, Criminal Action No. 1:15-23-RGA, in the United States District Court for the District of Delaware (hereafter "the Criminal Conspiracy Case").

51.     Counter-plaintiffs were within the zone of illegality of such unlawful conspiracy because their very homestead, unique under law and equity, and their personal credit reputation, were exposed and endangered, resulting in actual and consequential damages.  The Counter-defendants undertook to categorize the alleged note upon which this suit is based as being "under modification," purposefully ignoring the repeated notifications of uncollectibility and illegality, of the alleged note, because a truthful reporting of the genuine status and character of Counter-plaintiffs' alleged liability would, together with corrected reporting of the other similar loans in Wilmington Trust's portfolio, would have a material, devastating effect upon it.

52.     Counter-defendants are collaterally estopped from denying their violations of law for such illegal conspiracy, and Counter-plaintiffs are entitled to judgment so proclaiming.

53.     Counter-plaintiffs demand recovery of their actual and consequential damages of and from all Counter-defendants, jointly and severally.

54.     Because such conduct by all Counter-defendants was wilful and malicious, Counter-plaintiffs demand recovery of punitive or exemplary damages, jointly and severally of and from all

Counter-defendants.

## JURY DEMAND

Counter-Plaintiffs demand a trial by jury on all issues related to both the Plaintiff's claims herein and on their counterclaims herein.

WHEREFORE, Defendants and Counter-Plaintiffs, Jon M. Robertson and Arminda M. Robertson, pray that Plaintiff and Counter-Defendant, Wilmington Trust, N.A., Successor Trustee to Citibank, N.A., as Trustee F/B/O Holders of Structured Asset Mortgage Investments II, Inc., Bear Sterns Alt-A Trust 2007-3, Mortgage Pass-Through Certificates Series 2007-3, take nothing by its suit herein and that, upon final judgment, Counter-Plaintiffs recover their actual and consequential damages jointly and severally against all Counter-defendants, including mental anguish and emotional distress as well as damage to credit reputation, that all previous payments made on the illegal Note be forfeited, that they recover treble the amount of economic damages and mental anguish damages, that the Court award punitive or exemplary damages jointly and severally against all Counter-defendants, that the Court award injunctive relief prohibiting Plaintiff and Counter-Defendant Wilmington Trust from asserting any claims against Defendants or their homestead, or from making any adverse credit reporting concerning Counter-Plaintiffs,  that Defendants and Counter-Plaintiffs recover their reasonable and necessary attorneys' fees, costs of Court,  pre-judgment and post-judgment interest to the maximum extent allowed by law, and general relief.

Respectfully submitted,

Law Offices of
LIPPE & ASSOCIATES

By:   /s/ Emil Lippe, Jr.
      Emil Lippe, Jr.

**FIRST AMENDED ANSWER AND FIRST AMENDED  COUNTERCLAIM OF**
**DEFENDANTS JON M. ROBERTSON AND ARMINDA M. ROBERTSON– - JURY DEMANDED - Page 22**

State Bar No. 12398300
Merit Tower
12222 Merit Drive, Suite 1200
Dallas, Texas 75251
Telephone: (214) 855-1850
Facsimile:  (214) 720-6074
emil@texaslaw.com

ATTORNEYS    FOR    DEFENDANTS AND
COUNTER-PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of July, 2018, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court, which will then send a notification of such filing to the following:

> Thomas G. Yoxall
> tyoxall@lockelord.com
> Matthew H. Davis
> mdavis@lockelord.com
> LOCKE LORD LLP
> 2200 Ross Avenue, Suite 2800
> Dallas, Texas 75201

> /s/ Emil Lippe, Jr.
> Emil Lippe, Jr.

LAW OFFICES OF

# LIPPE & ASSOCIATES

ATTORNEYS AND COUNSELORS AT LAW

A PROFESSIONAL CORPORATION

EMIL LIPPE, JR.*‡
—————
COREY S. HYDEN

600 N. PEARL STREET
SUITE S2460
SOUTH TOWER
PLAZA OF THE AMERICAS
DALLAS, TEXAS 75201
(214) 855-1850

FACSIMILE: (214) 720-6074

URL: http://www.texaslaw.com

*BOARD CERTIFIED
CIVIL TRIAL LAW AND
CIVIL APPELLATE LAW,
TEXAS BOARD
OF LEGAL SPECIALIZATION

‡ALSO ADMITTED
IN COLORADO AND
DISTRICT OF COLUMBIA

September 12, 2013

**VIA FACSIMILE (801-293-3936)**
**AND CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
**#7012 1640 0001 9182 7762**
SPS Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165

**VIA FACSIMILE (302-651-8937)**
**AND CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
**#7012 1640 0001 9182 7779**
Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890

**RE:**  Account #:        0015263494
Mortgagors:   Jon M. Robertson and Arminda M. Robertson
Property:        5511 W. Mockingbird Lane
Dallas, Texas 75209

To whom it may concern:

Please be advised that this firm represents Jon M. Robertson and Arminda M. Robertson
("the Robertsons") in regards to the above-referenced property. According to recent correspondence,
dated August 12, 2013, SPS Select Portfolio Servicing, Inc. ("SMS") is presently servicing a
purported mortgage note (the "Note") on behalf of Wilmington Trust Company ("Wilmington"),
Trustee for the benefit of holders of Structured Asset Mortgage Investments II Inc., Bear Stearns
ALT-A Trust 2007-3, Mortgage Pass-Through Certificates, Series 2007-3. The Note seemingly
referenced by your correspondence is secured an extension of credit as defined by Section 50(a)(6),
Article XVI of the Texas Constitution.

This letter serves as notice pursuant to Section 50(a)(6)(Q)(x), Article XVI of the Texas
Constitution to cure the defects related to the Note identified in this letter within sixty (60) days of
the date you receive this letter.

EXHIBIT "A"

SPS Select Portfolio Servicing, Inc.
Wilmington Trust Company
September 12, 2013
Page 2

The underlying Note is void and defective under the Texas Constitution. The Note violates Section 50(a)(6)(B) Article XVI of the Texas Constitution because the Note causes the total alleged encumbrances upon the Robertsons' homestead to exceed 80% of the value of the home and property. On its face, the Note purports to encumber the Robertsons' home in the amount of $760,000.00 despite an appraised value of only $850,000.00. Even if the appraisal was correct,[1] the maximum total potential encumbrance on the Robertsons' home under the Texas Constitution was only $680,000.00 (80% of the appraised value). Accordingly, **DEMAND IS HEREBY MADE** that, pursuant to Section 50(a)(6)(Q)(x) of the Texas Constitution, you immediately cure this violation by both paying any amount overpaid by the Robertsons related to the 80% violation described herein to the Robertsons and by returning a verified, written acknowledgment that the Note does not attempt to encumber the above-referenced property in an amount greater than 80% of its value, which also lists the current alleged debt under the Note. Alternatively, you may return a verified, written acknowledgment that you do not purport to hold any Note that would encumber the Robertsons' homestead.

Further, the Note is defective and void as it violates Section 50(a)(6)(O), Article XVI of the Texas Constitution because it charges an illegal and improper interest rate on a qualifying mortgage note. Specifically, the Note is internally inconsistent as to the interest rate to be charged and the manner in which the interest rate will be calculated. The agreed, fixed interest rate of 7.375% is replaced at times by a variable interest rate. This defect also violates Section 50(a)(6)(L)(i), Article XVI of the Texas Constitution because is causes the loan to have an illegal amortization. Accordingly, **DEMAND IS HEREBY MADE** that, pursuant to Section 50(a)(6)(Q)(x) of the Texas Constitution, you immediately cure this violation by paying any interest payment made over the 7.375% fixed-rate as listed in the Note to the Robertsons.

Failure to cure the above-listed issues within 60 days of the date you receive this letter will cause the holder of the Note to forfeit all principal and interest payments made by the Robertsons at any point under the Note, and may also cause the holder of the Note to lose certain rights or interests under the Note.

Additionally, pursuant to your previous correspondence dated August 12, 2013 and Section 50(a)(6)(Q)(vii), Article XVI of the Texas Constitution, the Robertsons dispute the amount of indebtedness allegedly owed and sought by SPS and Wilmington under the Note and request a verification of the alleged debt, along with a copy of the note endorsement and the document assigning the lien to the current holder, and any documents reflecting intervening assignments and sales, plus a detailed explanation of all charges on the account.

---

[1] The appraisal was seemingly performed by David Wertenberger, the husband of the Patty Wertenberger, who brokered the mortgage. The investigation as to the validity and legitimacy of the appraisal is ongoing.

EXHIBIT "A"

SPS Select Portfolio Servicing, Inc.
Wilmington Trust Company
September 12, 2013
Page 3

SPS and Wilmington, and their predecessors, have also violated the Chapter 392 of the Texas Finance Code by misrepresenting the character, nature, and quality of the debt allegedly associated with the Note. A cursory review of the attempts to collect under the Note reveal literally hundreds of improper charges, interest rate accruals, and communications. Each violation under the law provides for independent statutory damages, in addition to other penalties and fees. Due to your violations of the aforementioned statute, **DEMAND IS HEREBY MADE** that you immediately remit to the Robertsons, by check made payable to "Jon M. Robertson and Arminda M. Robertson", $200,000.00, constituting payment for the violations, the damages associated therewith, and the attorneys' fees accrued in presenting this demand. This demand is made in addition to the other demands herein, is separate in all respects, and only settles the damages associated with your violations of Chapter 382 of the Texas Finance Code.

Failure to undertake the actions listed in this letter will result in immediate litigation. Please direct all correspondence or inquiries regarding this matter to the undersigned attorney.

Very truly yours,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:  Emil Lippe, Jr.

EXHIBIT "A"

Law Offices Of

# LIPPE & ASSOCIATES

## Attorneys and Counselors at Law

### Plaza of the Americas, South Tower
### 600 N. Pearl Street, Suite S2460
### Dallas, Texas  75201

**Phone 214-855-1850**
Fax 214-720-6074

September 12, 2013

# FACSIMILE COVER SHEET

**TO:**      SPS Select Portfolio Servicing, Inc.      801-293-3936

Wilmington Trust Company      302-651-8937

**FROM:**   Emil Lippe, Jr.

**RE:**      Account #:      0015263494
Mortgagors:      Jon M. Robertson and Arminda M. Robertson
Property:      5511 W. Mockingbird Lane
Dallas, Texas 75209

WE ARE SENDING _____4_____ PAGES, INCLUDING THIS COVER SHEET.  SHOULD YOU HAVE ANY PROBLEMS RECEIVING THIS TRANSMITTAL, PLEASE CONTACT THE OPERATOR, Carey, AT 214-855-1850.

*Unless otherwise indicated or obvious from the nature of this transmittal, the information contained in this fax message is attorney-client privileged and confidential, intended only for the use of the intended recipient named above.  If the reader of this message is not the intended recipient (or the employee or agent of the intended recipient), you are hereby notified that any distribution or copying of this communication is prohibited.  If you have received this communication in error, please immediately notify us by collect telephone and return the original message to us at the above address at our expense.*

EXHIBIT "A"

## HP Color LaserJet CM1312nfi MFP

# Fax Confirmation Report

LIPPE & ASSOCIATES
2147206074
Sep-12-2013  11:13AM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 3527 | 9/12/2013 | 11:10:28AM | Send | 18012933936 | 1:19 | 4 | OK |
| 3528 | 9/12/2013 | 11:11:52AM | Send | 13026518937 | 1:32 | 4 | OK |

Law Offices Of
**LIPPE & ASSOCIATES**
Attorneys and Counselors at Law
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas  75201
**Phone 214-855-1850**
Fax 214-720-6074

September 12, 2013

**FACSIMILE COVER SHEET**

| | | |
|---|---|---|
| **TO:** | SPS Select Portfolio Servicing, Inc. | 801-293-3936 |
| | Wilmington Trust Company | 302-651-8937 |
| **FROM:** | Emil Lippe, Jr. | |
| **RE:** | Account #: | 0015263494 |
| | Mortgagors: | Jon M. Robertson and Arminda M. Robertson |
| | Property: | 5511 W. Mockingbird Lane |
| | | Dallas, Texas 75209 |

WE ARE SENDING _____4_____ PAGES, INCLUDING THIS COVER SHEET. SHOULD YOU HAVE ANY PROBLEMS RECEIVING THIS TRANSMITTAL, PLEASE CONTACT THE OPERATOR, Carey, AT 214-855-1850.

*Unless otherwise indicated or obvious from the nature of this transmittal, the information contained in this fax message is attorney-client privileged and confidential, intended only for the use of the intended recipient named above. If the reader of this message is not the intended recipient (or the employee or agent of the intended recipient), you are hereby notified that any distribution or copying of this communication is prohibited. If you have received this communication in error, please immediately notify us by collect telephone and return the original message to us at the above address at our expense.*

EXHIBIT "A"

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)   MICHAEL A. SMITH   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7012 1640 0001 9182 7779

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

Wendy Daniels

☐ Agent
☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

SPS Select Portfolio
    Servicing Inc
PO Box 65250
Salt Lake City, UT
    84165

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7012 1640 0001 9182 7762

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

EXHIBIT "A"

# LIPPE & ASSOCIATES

ATTORNEYS AND COUNSELORS AT LAW

A PROFESSIONAL CORPORATION

LAW OFFICES OF

EMIL LIPPE, JR. * ‡

OF COUNSEL:

DIANE K. SHAW

600 N. PEARL STREET
SUITE S2460
SOUTH TOWER
PLAZA OF THE AMERICAS
DALLAS, TEXAS 75201
(214) 855-1850

FACSIMILE: (214) 720-6074

URL: http://www.texaslaw.com
http://www.cmscompliancecounsel.com

*BOARD CERTIFIED
CIVIL TRIAL LAW AND
CIVIL APPELLATE LAW,
TEXAS BOARD
OF LEGAL SPECIALIZATION

‡ ALSO ADMITTED
IN COLORADO AND
DISTRICT OF COLUMBIA

September 15, 2016

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**#7015 0640 0001 3984 4233**
Daron L. Janis
Locke Lord, LLP
2200 Ross Avenue, Suite 2800
Dallas, TX 75201

| | | |
|---|---|---|
| **RE:** | Loan #: | 0015263494 (the "Loan") |
| | Borrower(s)/Owners: | Jon M. Robertson and Arminda M. Robertson |
| | Property Address | 5511 W. Mockingbird Lane |
| | | Dallas, Texas 75209 (the "Property") |

Dear Mr. Janis:

This is in reply to your letter dated September 9, 2016, concerning the above-referenced Loan. Although your correspondence has indicated that your firm has received what is purported to be the loan file from SPS, it appears, not surprisingly, that the files and correspondence which you have received are incomplete.

First and foremost, it must be emphasized that the letter sent by Mr. & Mrs. Robertson on July 15, 2016, and August 26, 2016, are not the original notices of defects in the loan, from which the opportunity to cure the identified defects is to be calculated.

I am enclosing for you copies of our demand letter dated September 12, 2013, and the follow up letters from this firm dated May 19, 2014, and January 8, 2015. The September 12, 2013, letter correctly sets forth the notices of defects in the loans from which the sixty (60) day opportunity to cure is to be measured. Obviously, SPS did nothing to cure these defects within the time period allowed.

Although the Robertsons have patiently attempted to deal with SPS by answering their questions and furnishing follow up information, at no point has this firm, or the Robertsons, withdrawn the notices previously sent to SPS which are enclosed. Furthermore, the subsequent valuations performed by your client since the correspondence was initiated has confirmed that the

EXHIBIT "B"

Daron L. Janis
September 15, 2016
Page 2

current fair market value of the property has continued to decline, taking in to consideration not only the property itself and the neighborhood, but also taking into consideration the substantial repairs necessary for the property.

   I will be available to discuss this matter further with you in an attempt to resolve any disputes, but this is without waiving the prior demands to which no timely response has ever been given.

       Very truly yours,

       **LAW OFFICES OF LIPPE & ASSOCIATES**

       By:  Emil Lippe, Jr.

EL:cm

Enclosures

EXHIBIT "B"

LAW OFFICES OF

# LIPPE & ASSOCIATES

ATTORNEYS AND COUNSELORS AT LAW

A PROFESSIONAL CORPORATION

EMIL LIPPE, JR.*‡
—————
COREY S. HYDEN

600 N. PEARL STREET
SUITE S2460
SOUTH TOWER
PLAZA OF THE AMERICAS
DALLAS, TEXAS 75201
(214) 855-1850

FACSIMILE: (214) 720-6074

URL: http://www.texaslaw.com

*BOARD CERTIFIED
CIVIL TRIAL LAW AND
CIVIL APPELLATE LAW,
TEXAS BOARD
OF LEGAL SPECIALIZATION

‡ALSO ADMITTED
IN COLORADO AND
DISTRICT OF COLUMBIA

September 12, 2013

**VIA FACSIMILE (801-293-3936)**
**AND CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
**#7012 1640 0001 9182 7762**
SPS Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165

**VIA FACSIMILE (302-651-8937)**
**AND CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
**#7012 1640 0001 9182 7779**
Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890

**RE:**   Account #:        0015263494
         Mortgagors:    Jon M. Robertson and Arminda M. Robertson
         Property:         5511 W. Mockingbird Lane
                              Dallas, Texas 75209

To whom it may concern:

Please be advised that this firm represents Jon M. Robertson and Arminda M. Robertson ("the Robertsons") in regards to the above-referenced property. According to recent correspondence, dated August 12, 2013, SPS Select Portfolio Servicing, Inc. ("SMS") is presently servicing a purported mortgage note (the "Note") on behalf of Wilmington Trust Company ("Wilmington"), Trustee for the benefit of holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust 2007-3, Mortgage Pass-Through Certificates, Series 2007-3. The Note seemingly referenced by your correspondence is secured an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

This letter serves as notice pursuant to Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution to cure the defects related to the Note identified in this letter within sixty (60) days of the date you receive this letter.

EXHIBIT "B"

SPS Select Portfolio Servicing, Inc.
Wilmington Trust Company
September 12, 2013
Page 2

The underlying Note is void and defective under the Texas Constitution. The Note violates Section 50(a)(6)(B) Article XVI of the Texas Constitution because the Note causes the total alleged encumbrances upon the Robertsons' homestead to exceed 80% of the value of the home and property. On its face, the Note purports to encumber the Robertsons' home in the amount of $760,000.00 despite an appraised value of only $850,000.00. Even if the appraisal was correct,[1] the maximum total potential encumbrance on the Robertsons' home under the Texas Constitution was only $680,000.00 (80% of the appraised value). Accordingly, **DEMAND IS HEREBY MADE** that, pursuant to Section 50(a)(6)(Q)(x) of the Texas Constitution, you immediately cure this violation by both paying any amount overpaid by the Robertsons related to the 80% violation described herein to the Robertsons and by returning a verified, written acknowledgment that the Note does not attempt to encumber the above-referenced property in an amount greater than 80% of its value, which also lists the current alleged debt under the Note. Alternatively, you may return a verified, written acknowledgment that you do not purport to hold any Note that would encumber the Robertsons' homestead.

Further, the Note is defective and void as it violates Section 50(a)(6)(O), Article XVI of the Texas Constitution because it charges an illegal and improper interest rate on a qualifying mortgage note. Specifically, the Note is internally inconsistent as to the interest rate to be charged and the manner in which the interest rate will be calculated. The agreed, fixed  interest rate of 7.375% is replaced at times by a variable interest rate. This defect also violates Section 50(a)(6)(L)(i), Article XVI of the Texas Constitution because is causes the loan to have an illegal amortization. Accordingly, **DEMAND IS HEREBY MADE** that, pursuant to Section 50(a)(6)(Q)(x) of the Texas Constitution, you immediately cure this violation by paying any interest payment made over the 7.375% fixed-rate as listed in the Note to the Robertsons.

Failure to cure the above-listed issues within 60 days of the date you receive this letter will cause the holder of the Note to forfeit all principal and interest payments made by the Robertsons at any point under the Note, and may also cause the holder of the Note to lose certain rights or interests under the Note.

Additionally, pursuant to your previous correspondence dated August 12,2013 and Section 50(a)(6)(Q)(vii), Article XVI of the Texas Constitution, the Robertsons dispute the amount of indebtedness allegedly owed and sought by SPS and Wilmington under the Note and request a verification of the alleged debt, along with a copy of the note endorsement and the document assigning the lien to the current holder, and any documents reflecting intervening assignments and sales, plus a detailed explanation of all charges on the account.

---

[1] The appraisal was seemingly performed by David Wertenberger, the husband of the Patty Wertenberger, who brokered the mortgage. The investigation as to the validity and legitimacy of the appraisal is ongoing.

EXHIBIT "B"

SPS Select Portfolio Servicing, Inc.
Wilmington Trust Company
September 12, 2013
Page 3

SPS and Wilmington, and their predecessors, have also violated the Chapter 392 of the Texas Finance Code by misrepresenting the character, nature, and quality of the debt allegedly associated with the Note. A cursory review of the attempts to collect under the Note reveal literally hundreds of improper charges, interest rate accruals, and communications. Each violation under the law provides for independent statutory damages, in addition to other penalties and fees. Due to your violations of the aforementioned statute, **DEMAND IS HEREBY MADE** that you immediately remit to the Robertsons, by check made payable to "Jon M. Robertson and Arminda M. Robertson", $200,000.00, constituting payment for the violations, the damages associated therewith, and the attorneys' fees accrued in presenting this demand. This demand is made in addition to the other demands herein, is separate in all respects, and only settles the damages associated with your violations of Chapter 382 of the Texas Finance Code.

Failure to undertake the actions listed in this letter will result in immediate litigation. Please direct all correspondence or inquiries regarding this matter to the undersigned attorney.

Very truly yours,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By:  Emil Lippe, Jr.

EXHIBIT "B"

Law Offices Of

# LIPPE & ASSOCIATES
## Attorneys and Counselors at Law
### Plaza of the Americas, South Tower
### 600 N. Pearl Street, Suite S2460
### Dallas, Texas  75201
**Phone 214-855-1850**
Fax 214-720-6074

September 12, 2013

# FACSIMILE COVER SHEET

**TO:**  SPS Select Portfolio Servicing, Inc.     801-293-3936

Wilmington Trust Company     302-651-8937

**FROM:**  Emil Lippe, Jr.

**RE:**  | Account #: | 0015263494 |
| Mortgagors: | Jon M. Robertson and Arminda M. Robertson |
| Property: | 5511 W. Mockingbird Lane |
| | Dallas, Texas 75209 |

WE ARE SENDING _____4_____ PAGES, INCLUDING THIS COVER SHEET.  SHOULD YOU HAVE ANY PROBLEMS RECEIVING THIS TRANSMITTAL, PLEASE CONTACT THE OPERATOR, Carey, AT 214-855-1850.

*Unless otherwise indicated or obvious from the nature of this transmittal, the information contained in this fax message is attorney-client privileged and confidential, intended only for the use of the intended recipient named above.  If the reader of this message is not the intended recipient (or the employee or agent of the intended recipient), you are hereby notified that any distribution or copying of this communication is prohibited.  If you have received this communication in error, please immediately notify us by collect telephone and return the original message to us at the above address at our expense.*

EXHIBIT "B"

**HP Color LaserJet** *CM1312nfi MFP*

# Fax Confirmation Report

LIPPE & ASSOCIATES
2147206074
Sep-12-2013  11:13AM

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 3527 | 9/12/2013 | 11:10:28AM | Send | 18012933936 | 1:19 | 4 | OK |
| 3528 | 9/12/2013 | 11:11:52AM | Send | 13026518937 | 1:32 | 4 | OK |

Law Offices Of
**LIPPE & ASSOCIATES**
Attorneys and Counselors at Law
Plaza of the Americas, South Tower
600 N. Pearl Street, Suite S2460
Dallas, Texas  75201
**Phone 214-855-1850**
**Fax 214-720-6074**

September 12, 2013

**FACSIMILE COVER SHEET**

| | | |
|---|---|---|
| TO: | SPS Select Portfolio Servicing, Inc. | 801-293-3936 |
| | Wilmington Trust Company | 302-651-8937 |
| FROM: | Emil Lippe, Jr. | |
| RE: | Account #: | 0015263494 |
| | Mortgagors: | Jon M. Robertson and Arminda M. Robertson |
| | Property: | 5511 W. Mockingbird Lane |
| | | Dallas, Texas 75209 |

WE ARE SENDING _____ 4 _____ PAGES, INCLUDING THIS COVER SHEET.  SHOULD YOU HAVE ANY PROBLEMS RECEIVING THIS TRANSMITTAL, PLEASE CONTACT THE OPERATOR, Carey, AT 214-855-1850.

*Unless otherwise indicated or obvious from the nature of this transmittal, the information contained in this fax message is attorney-client privileged and confidential, intended only for the use of the intended recipient named above.  If the reader of this message is not the intended recipient (or the employee or agent of the intended recipient), you are hereby notified that any distribution or copying of this communication is prohibited.  If you have received this communication in error, please immediately notify us by collect telephone and return the original message to us at the above address at our expense.*

EXHIBIT "B"

# LIPPE & ASSOCIATES

ATTORNEYS AND COUNSELORS AT LAW

A PROFESSIONAL CORPORATION

EMIL LIPPE, JR.*‡
———————
COREY S. HYDEN

600 N. PEARL STREET
SUITE S2460
SOUTH TOWER
PLAZA OF THE AMERICAS
DALLAS, TEXAS 75201
(214) 855-1850

FACSIMILE: (214) 720-6074

URL: http://www.texaslaw.com

*BOARD CERTIFIED
CIVIL TRIAL LAW AND
CIVIL APPELLATE LAW,
TEXAS BOARD
OF LEGAL SPECIALIZATION

‡ ALSO ADMITTED
IN COLORADO AND
DISTRICT OF COLUMBIA

May 19, 2014

SPS Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165

SPS Select Portfolio Servicing, Inc.
P.O. Box 65277
Salt Lake City, UT 84165

Select Portfolio Servicing, Inc.
3815 S. West Temple
Salt Lake City, UT 84115

**RE:**   Account #:        0015263494
Mortgagors:   Jon M. Robertson and Arminda M. Robertson
Property:         5511 W. Mockingbird Lane
Dallas, Texas 75209

Gentlemen:

As you have previously been advised, this law firm represents Mr. and Mrs. Robertson in connection with the above-referenced loan. This letter is being sent in response to your letters dated March 3, 2014, May 5, 2014, and May 7, 2014, concerning the above-referenced property. This letter is also being sent to follow up on numerous written responses sent by Mr. Robertson to SPS concerning these issues.

In many of your letters, there are repeated references to a so-called "NPV Calculation," with respect to the loan and/or the real property securing the same. Mr. Robertson has repeatedly questioned this so-called "calculation," how the calculation supposedly works, and has challenged the legitimacy and relevance thereof.

Please be advised that this loan relates to a homestead located wholly within the State of Texas, and is therefore subject to applicable provisions of both the Texas Constitution and Texas Property Code, among other laws. We have previously advised you, by our letter dated September 12, 2013, of the various violations of the Texas Constitution that are involved in this lending relationship, which absolutely must be taken into consideration in making any calculations regarding the "value" of this loan. We have never withdrawn such notice of violation, and none of the communications since then from our client or from this firm shall be interpreted as a withdrawal of such notice of violation.

EXHIBIT "B"

SPS Select Portfolio Servicing, Inc
May 19, 2014
Page 2

We have been, quite frankly, puzzled at your company's insistence upon use of an "NPV calculation," because to our knowledge no provision of the Texas Constitution, the Texas Property Code, the United States Code, or of the Note and Deed of Trust, provide for such a mechanism. Accordingly, we must conclude that this is nothing more than an arbitrary internal tool, to which our client has never agreed and is not bound to follow.

Your March 3, 2014, letter included several sheets with fields for information, and numbers and dates inserted in the various fields, purporting to represent or depict the "NPV calculation." Although you stated in such letter that "detailed instructions for challenging the NPV calculation" were enclosed. Furthermore, it would be practically impossible to do so in any event, since the calculation is not revealed, nor the weighting applied to various items included in the calculation. Many of the Inputs to the NPV calculation were incorrect and distinctly pointed out in Mr. Robertson's response of March 31, 2014, to which you have never responded, or furnished an explanation.

Nothing contained in such letter ever explained, or stated the results of, the "NPV calculation," or how the "calculation" was performed utilizing the "input field values." In most instances, the "input field values," or the basis for the numbers or other information inserted, are not explained. We requested clarification of the NPV calculation, since nothing in the March 3, 2013, letter indicates a) the comparative value, b) how discounted, nor c) the results of the NPV calculation. My client is deeply experienced in NPV calculations, but the information provided by SPS is at least incomplete and at worst senseless. There is no basis for determining a rebuttal to the NPV calculation without knowing the premises and assumptions used in the calculations.

My client has repeatedly requested an appraisal by a qualified and experienced appraiser, and SPS has refused to provide one. Reliance upon Broker Price Opinions (BPO) is demonstrably and historically risky at best because of their inaccuracy and lack of supporting evidence. In this case, BPOs are even more unreliable due to the extreme amount of serious deferred maintenance and repair, as evidence by the inspection report that has been sent to you.

Finally, of course, it is our position that any such "calculation" is worthless if it fails to take into consideration the fact that this loan relates to a homestead in the State of Texas (which is void and subjects the lender to potential liability to refund all sums collected as a result of the illegal loan), and that the loan is a non-recourse loan collectible only from the net realizable sales value of the property allegedly securing the same (assuming, of course, that SPS is able to avoid having the lien stricken and declared void for violation of the Texas Constitution).

Our clients remain willing to discuss a fair and reasonable modification to the loan, in order to avoid the burden and expense of litigation, provided that SPS obtains a competent appraisal of the property taking all relevant market factors and needed repairs into consideration.

EXHIBIT "B"

SPS Select Portfolio Servicing, Inc
May 19, 2014
Page 3

                   Very truly yours,

                   **LAW OFFICES OF LIPPE & ASSOCIATES**

                   By:  Emil Lippe, Jr.

EXHIBIT "B"

LAW OFFICES OF

# LIPPE & ASSOCIATES

ATTORNEYS AND COUNSELORS AT LAW

A PROFESSIONAL CORPORATION

EMIL LIPPE, JR.*‡

———

COREY S. HYDEN

600 N. PEARL STREET
SUITE S2460
SOUTH TOWER
PLAZA OF THE AMERICAS
DALLAS, TEXAS 75201
(214) 855-1850

FACSIMILE: (214) 720-6074

URL: http://www.texaslaw.com

*BOARD CERTIFIED
CIVIL TRIAL LAW AND
CIVIL APPELLATE LAW,
TEXAS BOARD
OF LEGAL SPECIALIZATION

‡ALSO ADMITTED
IN COLORADO AND
DISTRICT OF COLUMBIA

January 8, 2015

SPS Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165
Attn: Ms. Judith Alsup, Relationship
Manager

SPS Select Portfolio Servicing, Inc.
P.O. Box 65277
Salt Lake City, UT 84165

Select Portfolio Servicing, Inc.
3815 S. West Temple
Salt Lake City, UT 84115

**RE:**   Account #:        0015263494
      Mortgagors:     Jon M. Robertson and Arminda M. Robertson
      Property:       5511 W. Mockingbird Lane
                 Dallas, Texas 75209

Gentlemen:

As you have previously been advised, this law firm represents Mr. and Mrs. Robertson in connection with the above-referenced loan. This letter is being sent in response to your letter dated November 29, 2014, and to follow up on Mr. Robertson's letter dated December 18, 2014, concerning the above-referenced property. I will attempt, once more, to highlight our major concerns and reiterate our prior demands.

## NON-WAIVER OF CONSTITUTIONAL VIOLATIONS

We have previously advised you, by our letter dated September 12, 2013, of the various violations of the Texas Constitution that are involved in this lending relationship, which absolutely must be taken into consideration in making any calculations regarding the "value" of this loan. We have never withdrawn such notice of violation, and none of the communications since then from our client or from this firm shall be interpreted as a withdrawal of such notice of violation. The repeated attempts by our client to negotiate a resolution of this matter have been without waiver of our position, but rather seeking to obtain some settlement of the disputes.

EXHIBIT "B"

SPS Select Portfolio Servicing, Inc.
January 8, 2015
Page 2

Therefore, all of your previous communications discussing the "Net Present Value" calculations are fundamentally flawed, because the invalidity of your note and lien instrument mean that if litigation ever becomes necessary, you will be unable to foreclose on the real property, and you will be unable to benefit from its value, whatever that value may be. Furthermore, because the note is a non-recourse instrument, Mr. and Mrs. Robertson have no personal liability. Therefore, at the present time, absent any settlement and agreed modification, it is clear that the true "Net Present Value" of the instrument being held by your client is **zero ($0.00) dollars.** Therefore, any negotiations concerning the loan at issue herein must take this fact into consideration.

## IDENTIFICATION OF TRUE OWNER OF NOTE

Despite repeated demands, you continue to refuse to identify the true owner of the alleged promissory note in question. Our client is entitled to such identification, and then, once we obtain such information, to production of the original promissory note and any endorsement, allonge, or other instrument purportedly assigning the same to such person or entity. This is fundamental to our being able to negotiate in good faith toward a mutual resolution of this matter, and it is something that you would have to do anyway if litigation should occur.

## CONSIDERATION OF GENUINE APPRAISED VALUE

After many exchanges between our client and SPS, an appraisal was obtained of the value of the Property at **$515,000**. Our clients retained a qualified appraiser, who concluded that the value of the Property is **$475,000**. In disputes concerning tax valuation between our clients and the Dallas County Appraisal District, a binding arbitrated valuation was obtained, placing the value of the Property at **$467,800**. Our clients have also obtained, and submitted to you, an inspection report dated March 13, 2014, which determined that the Property has substantial and very serious repair and maintenance issues requiring major repairs, which we believe would approximate some **$50-75,000**, which would diminish the net sales proceeds to the lender in the event of a foreclosure sale. We doubt that these correct numbers have been taken into consideration in responding to our clients' repeated demands and requests for a workable proposal, because the Texas Constitution (Article 16, Section 50) limits a home equity loan to 80% of appraised value. This means that your alleged note in the principal amount of $606,682 is invalid and unconstitutional, and therefore worthless.

## FUNDAMENTAL ERRORS IN "NPV"/MODIFICATION ANALYSIS

Our clients have detailed, in their December 18, 2014, letter, the many errors in your analysis of the "NPV" and/or the proposed modification of the loan. These can be summarized as follows:

> ► **Property value** used for negotiation purposes cannot exceed the $467,800-$515,000 range, and the permitted percentage of appraised value allowed under the Texas Constitution

EXHIBIT "B"

SPS Select Portfolio Servicing, Inc.
January 8, 2015
Page 3

    ▸    **Monthly gross income** of the borrowers has been shown to be sufficient for a modified loan on reasonable terms in the modified principal balance which is supportable under the Texas Constitution

    ▸    **Credit scores** of the borrowers will improve with the loan modification and resulting correction to show that the mortgage is being paid as agreed

    ▸    **Monthly real estate taxes** which you have used in your previous calculations are based upon factually incorrect tax value

    ▸    **Amortization term** utilized in your calculations has been shortened to an arbitrarily short term which is not in accordance with standard practice in the industry, which was utilized to make the required monthly payment unreasonably higher.

## CONCLUSION

For these reasons, it is apparent that to date no serious and principled attempt has been made to negotiate a reasonable and meaningful loan modification. Pursuit of a proper loan modification will be mutually beneficial both to SPS and the noteholder, and to our clients, because it will assure all parties of a workable loan that is performing, allowing our clients to continue living in their home, and allowing SPS to service a performing note. We therefore invite your prompt and favorable response.

Very truly yours,

**LAW OFFICES OF LIPPE & ASSOCIATES**

By: Emil Lippe, Jr.

cc:    SPS in care of: shortsale@spservicing.com

EXHIBIT "B"

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Daron L. Janis
Locke Lord LLP
2200 Ross Ave Ste 2800
Dallas TX 75201

9590 9401 0060 5071 3775 88

2. Article Number (Transfer from service label)

7015 0640 0001 3984 4233

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Ronald H Dickens   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Ronald G Dickens   7-19-16

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

EXHIBIT "B"